IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

GREGORY SILVERMAN and            )
CASSIE SILVERMAN                 )
                                 )
          Plaintiffs,            )
                                 )
     v.                          )          1:08CV155
                                 )
UNITED STATES OF AMERICA         )
                                 )
          Defendant.             )

FILED
JAN -7 2011
IN THIS OFFICE
Clerk, U. S. District Court
Greensboro, N. C.
By ___KO____

MEMORANDUM OPINION AND ORDER

OSTEEN, JR., District Judge

     Plaintiffs Gregory and Cassie Silverman are husband and wife
and are citizens and residents of Guilford County, North
Carolina.  Plaintiffs brought claims against the United States
as a result of a February 4, 2005, motor vehicle accident in
which Plaintiff Gregory Silverman ("Mr. Silverman") was injured
while operating a tractor-trailer.

     Plaintiffs brought these claims in the United States
District Court for the Middle District of North Carolina pursuant
to the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq.
("FTCA"), seeking recovery for damages.  The complaint seeks
recovery for personal injuries suffered as a result of the crash
of the tractor-trailer operated by Mr. Silverman.  Plaintiffs
contend that the United States Postal Service ("USPS") loaded the

trailer improperly and that this was the cause of the accident in which Mr. Silverman was injured. Plaintiffs' complaint asserts three specific bases for relief against Defendant: negligence, res ipsa loquitur, and loss of consortium. Defendant filed an answer denying the material allegations of the complaint and asserting affirmative defenses, including contributory negligence.

On October 20, 2010, this case proceeded to a bench trial before this court. This matter is now ripe for decision, and this court issues the following Findings of Fact and Conclusions of Law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. For the reasons set forth herein, this court finds that judgment should be entered in favor of Defendant and that Plaintiffs' claims should be dismissed with prejudice.

**FINDINGS OF FACT AND PRELIMINARY CONCLUSIONS OF LAW**

1. Plaintiffs are citizens and residents of Guilford County, North Carolina. Defendant is the United States of America.[1]

2. On February 1, 2007, Plaintiffs presented complete and proper administrative claims in writing to the appropriate federal agency for determination, as required by 28 U.S.C. § 2675(a). Specifically, Plaintiffs each submitted to USPS,

---

[1] "Defendant," "United States," and "USPS" are used interchangeably in this opinion.

Greensboro District, an executed Standard Form 95 claiming money damages in the amount of $7,000,000.00 for personal injury to Mr. Silverman and $750,000.00 for personal injury to Plaintiff Cassie Silverman ("Mrs. Silverman"). The USPS Tort Claim Coordinator for the Greensboro District gathered information related to Plaintiffs' claims. Plaintiffs' claims were denied by letter dated September 13, 2007.

3. On March 7, 2008, Plaintiffs filed a complaint against Defendant in the United States District Court for the Middle District of North Carolina pursuant to the FTCA.

4. This court has jurisdiction over the parties and the subject matter. Venue is proper in this district.

5. Plaintiffs Gregory Silverman and Cassie Silverman are married, and have been married since November 7, 1998.

6. Mail Contractors of America ("MCA") is a highway contractor that transports mail for USPS. Among other responsibilities, MCA provides tractors and drivers to transport United States Mail from the Bulk Mail Center in Greensboro, North Carolina ("BMC"), to various destinations.

7. At the BMC, each trailer containing U.S. Mail is loaded and sealed by USPS before it is turned over to the driver for transport. Defendant's policy, at least with respect to the BMC, is to load all trailers without supervision by the responsible driver and to seal each trailer with a lock before turning it

3

over to the responsible driver. Defendant typically maintains a record of data about a loaded trailer using a Contract Route Vehicle Record, PS Form 5398-A ("5398-A"). The 5398-A contains information about the load on the trailer such as the load percentage, the number of straps used to secure the load, and the initials of the person who checked the load restraint and sealed the trailer. (Def.'s Supplemental Trial Br. (Doc. 40-2) 2.)

8. At all times pertinent to this case, Mr. Silverman was employed by MCA as a truck driver working five to six days per week. As of February 4, 2005, Mr. Silverman had worked for MCA for approximately a year and a half. During that time, Mr. Silverman hauled mail for MCA numerous times from the BMC to Columbia, South Carolina. Mr. Silverman always used the same route to travel from the BMC to Columbia, proceeding east on Interstate 40 ("I-40") to U.S. Highway 220 ("US-220") South and then taking the exit ramp from US-220 South onto Interstate 85 Business ("I-85") South.

9. On February 4, 2005, Mr. Silverman reported to work at MCA, where he picked up the tractor he was assigned to drive: a 2005 Freightliner Columbia Tractor, equipped with an Eaton-Fuller FR-14210B transmission, owned by MCA. He then proceeded to the BMC to pick up a trailer that was to be delivered to Columbia, South Carolina. When Mr. Silverman arrived at the BMC, USPS gave him a dock assignment. The dock assignment does not show who

loaded the trailer that is parked at the assigned dock. In accordance with Defendant's policy, Mr. Silverman's assigned trailer was loaded and sealed without his participation or supervision, and Mr. Silverman was not allowed to inspect the load. Mr. Silverman hooked his tractor to the assigned trailer and pulled away from the loading dock. He then stopped, exited his vehicle, and checked the trailer to verify, among other things, that the door of the trailer was properly sealed.

10. Mr. Silverman then left the BMC, pulling up to the gate and showing his paperwork before proceeding out of the BMC onto Wendover Avenue. He then continued onto I-40 heading east, exited onto US-220 South, and from there intended to exit onto I-85 South. While traveling from the BMC to US-220, Mr. Silverman did not experience any problems with the trailer, and there were no dramatic events that affected the maneuverability of the truck.

11. In the area where the accident occurred, US-220 South consists of two dedicated southbound lanes and one dedicated lane that exits onto I-85 South. The posted speed limit for that portion of US-220 South is fifty-five (55) miles per hour. Just before the exit ramp, there is a warning sign on the west side of the roadway. The sign displays the advisory speed for the exit ramp, which is thirty-five (35) miles per hour. The warning sign was installed on March 19, 1998, and was present on the day of

5

the accident. The configuration of the exit ramp is such that traffic entering the ramp makes an initial curve to the right, followed by a curve back to the left before merging onto I-85.

12. On February 4, 2005, as Mr. Silverman exited US-220 South, his trailer turned over, sliding on its side and causing the tractor to turn over as well. Mr. Silverman was injured in the accident.

13. David Dean, who testified as a witness in this case, has been driving trucks for thirty-one (31) years. Mr. Dean has pulled trailers from forty-eight (48) to fifty-three (53) feet in length for USPS in the past. On February 4, 2005, Mr. Dean was driving a tractor-trailer on US-220 South. Mr. Dean saw the tractor-trailer driven by Mr. Silverman enter US-220 South from I-40 directly in front of him. Mr. Dean observed Mr. Silverman's tractor-trailer from the time he first saw it merge onto US-220 South until it overturned on the ramp to I-85. Mr. Dean testified that the posted speed limit on US-220 South was fifty-five (55) miles per hour, that he was traveling sixty-five (65) miles per hour as he approached the exit ramp from US-220 to I-85, and that Mr. Silverman was also traveling sixty-five (65) miles per hour as he approached the exit ramp. As he followed Mr. Silverman's tractor-trailer, Mr. Dean never saw the brake lights on Mr. Silverman's tractor-trailer light up, and Mr. Silverman's tractor-trailer did not slow down. Mr. Dean observed

the wheels on the right side of Mr. Silverman's trailer lift off the ground as Mr. Silverman went around the initial exit ramp curve, such that Mr. Dean could see daylight under the right wheels of the trailer before it rolled over. Mr. Dean then saw the trailer go over, followed by the tractor, and he watched the vehicle skid on its side through the ramp. This court finds Mr. Dean's testimony credible, and based upon that testimony, this court finds that Mr. Silverman was traveling at sixty-five (65) miles per hour and failed to slow down as he exited US-220 South and traveled through the ramp toward I-85.

14. Mr. Silverman told investigating Greensboro Police Officer Lester Prescod that he was traveling between forty-five (45) and fifty-five (55) miles per hour at the time of the crash.[2]

15. In the administrative claims they filed on February 1, 2007, Plaintiffs asserted that Mr. Silverman's tractor-trailer rolled over due to a sudden load shift that resulted from USPS's negligent loading of the trailer. Mr. Silverman offered similar testimony at trial and stated that he heard mail carts crashing around in the trailer just before the accident.

16. The 2005 Freightliner Columbia Tractor, with an Eaton-Fuller FR-14210B transmission, that Mr. Silverman was operating

---

[2] Although this court finds that Mr. Silverman did make this statement to Officer Prescod, as noted previously, this court credits Mr. Dean's testimony as to Mr. Silverman's speed.

on the day of the accident contained a Detroit Diesel Electronic Control ("DDEC") data recording system. The DDEC is a system maintained and used regularly by MCA. The DDEC records engine data and operating history, including vehicle speed, braking data, clutch data, and engine RPM. On February 8, 2005, MCA downloaded and printed the DDEC data for the tractor that Mr. Silverman had been driving on February 4, 2005.

17. David McCandless is an engineer, and was qualified to testify as an expert witness in mechanical engineering and accident reconstruction during this trial. Mr. McCandless was hired by Defendant.

18. Mr. McCandless identified the 2003 Manual on Uniform Traffic Control Devices, Section 2C.36, which addresses advisory speed signs. Such signs are to be used where engineering judgment indicates the need to advise road users of the recommended speed on an exit, a ramp, or a curve. Thus, the warning sign on the west side of US-220 South, near the exit onto I-85 South, advises drivers that thirty-five (35) miles per hour is the safe speed for the exit ramp from US-220 South to I-85 South.

19. Mr. McCandless opined, based upon his review of the accident scene and other evidence, including the DDEC report, that the tractor-trailer operated by Mr. Silverman was traveling at a speed of sixty-seven (67) miles per hour as it exited US-220

onto I-85. Mr. McCandless further opined that the truck was traveling in tenth gear before, during, and after the rollover and that Mr. Silverman never applied the brakes or downshifted as he exited from US-220 onto I-85.[3]

20. Mr. McCandless further testified that the ultimate cause of the accident was the excessive speed of the tractor-trailer given the curve of the roadway. Mr. McCandless opined that, at a speed of sixty-five (65) miles per hour, the tractor-trailer operated by Mr. Silverman would have rolled over regardless of the loading conditions.

21. This court finds Mr. McCandless' testimony to be credible and substantial evidence of the cause of the accident.

22. During the course of discovery in this case, Plaintiffs asked Defendant to identify all persons with knowledge or information pertaining to Plaintiffs' claims and to identify all documents related to their claims. In response to Plaintiffs' interrogatories, USPS informed Plaintiffs that it was unable to identify specific USPS employees with knowledge about the loading

---

[3] At trial, Plaintiffs objected to the introduction of the DDEC report into evidence, arguing that Defendant had not authenticated the report in accordance with Federal Rule of Evidence 901(b)(9). For reasons stated in the record, this court overruled the objection. However, even if the DDEC report was not properly admitted, there is other credible evidence that supports the same findings by this court. Mr. Dean testified that he was traveling at sixty-five (65) miles per hour, that Mr. Silverman was traveling at the same speed, and that Mr. Silverman's brake lights never came on as he exited US-220 South onto I-85 South.

of the trailer that Mr. Silverman was towing on February 4, 2005,
and that it had no records indicating who loaded Mr. Silverman's
trailer. USPS stated further that information about the loading
of the trailer would have been recorded on a 5398-A at the time
the trailer was loaded and sent out. However, USPS informed
Plaintiffs that it had no hard copies or electronic copies of the
5398-A for Mr. Silverman's trailer because they had been
destroyed pursuant to USPS's two-year document retention policy.
(Def.'s Supplemental Resps. Pls.' First Set Interrogs. 7;[4] <u>see</u>
Def.'s Trial Br. (Doc. 29) 14.)

    23. Defendant had actual notice of Plaintiffs'
administrative claims, including their assertion that USPS's
negligent loading of the trailer resulted in a sudden load shift
that caused the tractor-trailer to roll over, on February 1,
2007. Defendant, by and through its Tort Claim Coordinator,
gathered information and documents related to Plaintiffs' claims,
but did not maintain or make any notes as to the existence of the
5398-A. Based upon Defendant's representations, this court finds
that the 5398-A would have contained significant information

---

[4] The Clerk's minutes do not reflect that any part of
Plaintiffs' Exhibit 4, the interrogatory responses, was admitted
into evidence at trial. This court finds that was an oversight
on the court's part, as Plaintiffs moved for admission of a
portion of the exhibit and Defendant had no objection. To the
extent it was not admitted previously, Defendant's response to
Interrogatory 6, which is part of Plaintiffs' Exhibit 4, is
hereby admitted.

about the loading of the trailer. Although Defendant has a two-year document retention policy, Defendant is not sure whether, or when, the 5398-A was actually destroyed. This court concludes that Plaintiffs are entitled to an adverse inference that the 5398-A would show that USPS negligently loaded the trailer involved in the accident on February 4, 2005.[5]

24. Mr. Silverman, as the operator of the tractor-trailer on February 4, 2005, had a duty to use that degree of care which a reasonable and prudent person would use under the same or similar circumstances. During the rollover accident, Mr. Silverman operated his tractor-trailer at a speed in excess of both the posted speed limit of fifty-five (55) miles per hour and the posted advisory speed for the exit ramp from US-220 South to I-85 South.

25. Mr. Silverman's excessive and negligent speed in operating the tractor-trailer on the exit ramp leading from US-220 South to I-85 was the proximate cause of the February 4, 2005, accident and the injuries Mr. Silverman sustained as a result.

26. In the alternative, notwithstanding any negligence on the part of Defendant, Mr. Silverman was contributorily negligent by operating the tractor-trailer in excess of the posted speed

---

[5] As will be discussed more fully hereinafter, there is a distinction between negligent loading of the trailer and the negligence that proximately caused this accident.

limit and at a speed in excess of that which a reasonable and prudent person would use under the circumstances, and by failing to reduce the speed of the vehicle to avoid an accident.

27. Mr. Silverman is not entitled to the recovery of damages as a result of the crash of February 4, 2005.

28. Mrs. Silverman is not entitled to the recovery of damages from Defendant because she has failed to prove that Defendant's negligence caused her injuries and because her claim is foreclosed by Mr. Silverman's contributory negligence.

## ANALYSIS

At the outset of its analysis, this court observes that, in this case under the FTCA, North Carolina state law serves as "the source of substantive liability." See FDIC v. Meyer, 510 U.S. 471, 478 (1994) (citations omitted); see also 28 U.S.C. § 1346(b)(1) (2006); Richards v. United States, 369 U.S. 1, 11-13 (1962). This court will consider Plaintiffs' three claims for relief in turn.

### Negligence

Plaintiffs first assert a claim of negligence against USPS. "'To state a claim for common law negligence, a plaintiff must allege: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach.'" Fussell v. N.C. Farm Bureau Mut. Ins. Co., 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010)

(quoting <u>Stein v. Asheville City Bd. of Educ.</u>, 360 N.C. 321, 328, 626 S.E.2d 263, 267 (2006)).

"'The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm, and calls a violation of that duty negligence.'" <u>Id.</u> (quoting <u>Council v. Dickerson's, Inc.</u>, 233 N.C. 472, 474, 64 S.E.2d 551, 553 (1951)). Thus, USPS was under a duty of ordinary care in loading the trailer that Mr. Silverman hauled on February 4, 2005.

Plaintiffs have presented no direct evidence that USPS breached its duty of ordinary care. Instead, Plaintiffs contend that an adverse inference that USPS breached its duty of care is appropriate as a sanction for USPS's destruction of the 5398-A for Mr. Silverman's trailer.

> "[W]hen a proponent's intentional [but not necessarily bad faith] conduct contributes to the loss or destruction of evidence, the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct. [The court may, inter alia,] permit the jury to draw unfavorable inferences against the party responsible for the loss or destruction of the original evidence. An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction."

<u>Buckley v. Mukasey</u>, 538 F.3d 306, 323 (4th Cir. 2008) (second and third alterations in original) (quoting <u>Vodusek v. Bayliner</u>

Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995)). "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001) (citation omitted).

Defendant has acknowledged that USPS Platform Operations Procedures require all outbound vehicles to be inspected before, during, and after loading, and that, for contract routes such as Mr. Silverman's, inspection data is recorded on a 5398-A. Indeed, Defendant's own response to Plaintiffs' interrogatories appears to assume, as a result of USPS's standard procedures, that a 5398-A existed for the trailer and load Mr. Silverman was towing on February 4, 2005. Therefore, it is reasonable to infer, and this court finds, that a 5398-A existed for the trailer Mr. Silverman was towing at the time of the accident. Further, in light of Defendant's representations that a 5398-A would show the trip number, time of departure, how much was on the trailer, the number of straps used to secure the load, and who inspected the load restraint and sealed the trailer, there can be little dispute that a 5398-A for Mr. Silverman's trailer would be relevant and material evidence in this case. However, Defendant has repeatedly indicated that the 5398-A for Mr. Silverman's trailer was likely destroyed pursuant to USPS's two-

year document retention policy, and this court finds that USPS did, in fact, intentionally destroy the 5398-A pursuant to its document retention policy.

Having determined that a 5398-A did exist for Mr. Silverman's trailer, that it was relevant and material to this case, and that USPS intentionally destroyed the 5398-A, this court must consider whether USPS "'knew the evidence was relevant to some issue at trial'" and nonetheless engaged in "'willful conduct [that] resulted in its loss or destruction.'" Buckley, 538 F.3d at 323 (quoting Vodusek, 71 F.3d at 156). Mr. Silverman's accident occurred, and the 5398-A for his trailer was generated, on February 4, 2005. Plaintiffs filed their administrative claims with USPS on February 1, 2007. Under USPS's two-year document retention policy, the 5398-A would not have been destroyed before February 4, 2007. USPS denied Plaintiffs' administrative claims on February 13, 2007.

Defendant argues that the filing of administrative claims on February 1, 2007, is an insufficient basis upon which to conclude that USPS reasonably should have known, when it destroyed the 5398-A on or after February 4, 2007, that the 5398-A may be relevant to anticipated litigation. This court does not find Defendant's argument persuasive.

In support of its position that a claim is insufficient to create an anticipation of litigation, Defendant has proffered

15

statistical information showing that only a small percentage of administrative tort claims proceed to litigation. However, it is noteworthy that in spite of those statistics, Defendant acquired and maintained other material that was relevant to Plaintiffs' claims, particularly material that supported Defendant's denial of the claims, such as Officer Prescod's police report. The maintenance of a claims file undermines Defendant's suggestion that it did not anticipate litigation based on the filing of claims in this case. Furthermore, and in the alternative, Defendant indicated that its two-year document retention policy is based on its analysis and judgment as to the costs and benefits of retaining or destroying documents. USPS has presumably reaped the benefits of not having to retain documents for more than two years, so it is equitable that Defendant should also bear the costs of its chosen policy. Here, Plaintiffs filed their claims on February 1, 2007. Two years from the date of Mr. Silverman's accident was February 4, 2007, three days later. This court concludes that Defendant knew, or reasonably should have known, that the 5398-A may be relevant to anticipated litigation, see Silvestri, 271 F.3d at 591, and nonetheless engaged in willful conduct resulting in its destruction by failing to institute a litigation hold on the 5398-A or to

otherwise preserve the form, see Buckley, 538 F.3d at 323.[6]  In its discretion, this court will therefore infer that the contents of the 5398-A, or further evidence that could have been identified based on those contents, would have demonstrated that USPS breached its duty of ordinary care in loading the trailer that Mr. Silverman was pulling on February 4, 2005.

However, this court will not draw an adverse inference against Defendant that fully controls Mr. Silverman's negligence claim.  USPS's position that Plaintiffs' administrative claims were denied because Mr. Silverman was contributorily negligent does not entirely excuse Defendant's failure to maintain the 5398-A, but it does provide some reasonable explanation of why USPS may not have identified the 5398-A as significant evidence that should be preserved.  Thus, this court will infer that the manner in which USPS loaded Mr. Silverman's trailer constituted a breach of USPS's duty of care, but will not extend that inference so far as to conclusively establish that USPS's breach was the proximate cause of Mr. Silverman's injuries.

---

[6] This court also finds it significant that, although three days was allegedly insufficient for Defendant to put a litigation hold on the 5398-A, Defendant was able to fully investigate and deny Plaintiffs' administrative claims by February 13, 2007, a mere twelve days after the claims were filed.  Moreover, while Defendant has presented evidence from its claims file, there is no notation that the 5398-A was destroyed before the claims examiner could review it or that the claims examiner sought to review the 5398-A before denying the claims.

Plaintiffs' only evidence that USPS's negligent loading of the trailer proximately caused the accident is Mr. Silverman's assertion that, immediately prior to the rollover, he heard mail carts crashing against the sides of the trailer, suggesting that a load shift caused the accident. While this court does not doubt that Mr. Silverman's testimony was offered in good faith, this court is not persuaded that a load shift resulting from USPS's negligent loading caused the rollover. Plaintiffs did not offer any testimony that Mr. Silverman had ever successfully taken the exit from US-220 South to I-85 South with a fully loaded trailer at sixty-five (65) miles per hour,[7] nor did Plaintiffs assert that Mr. Silverman has any unique experience with identifying the causes or sounds of rollover accidents. Accordingly, this court will not adopt Mr. Silverman's conclusion that a load shift caused his accident.

Instead, this court is persuaded by the testimony of Mr. McCandless. He testified that the ultimate cause of the accident was the excessive speed of Mr. Silverman's tractor-trailer given

_____

[7] Mr. Silverman testified that he had previously proceeded through this exit and ramp at "highway speeds" without incident. The speed limit for US-220 South is fifty-five (55) miles per hour. Even assuming Mr. Silverman meant fifty-five (55) miles per hour as a "highway speed," on February 4, 2005, Mr. Silverman proceeded through the exit and ramp at sixty-five (65) miles per hour, well in excess of his own description of his previous experiences. This court will not infer, nor would it find credible, that "highway speeds" meant speeds of sixty-five (65) miles per hour through a ramp with a posted advisory speed of thirty-five (35) miles per hour.

the curve of the roadway. Mr. McCandless opined that, at a speed of sixty-five (65) miles per hour, the tractor-trailer operated by Mr. Silverman would have rolled over regardless of the loading conditions. Based on Mr. McCandless' testimony and Plaintiffs' lack of evidence to the contrary, this court concludes that Mr. Silverman's speed, and not USPS's negligent loading of the trailer, was the proximate cause of Mr. Silverman's accident.

Further, even assuming Plaintiffs had demonstrated that USPS's negligence was a proximate cause of the accident, this court concludes that Mr. Silverman's negligence claim is barred due to Mr. Silverman's own contributory negligence. Under North Carolina law, "a plaintiff's right to recover in a personal injury action is barred upon a finding of contributory negligence." Cobo v. Raba, 347 N.C. 541, 545, 495 S.E.2d 362, 365 (1998) (citing Brewer v. Harris, 279 N.C. 288, 298, 182 S.E.2d 345, 350 (1971)). The Supreme Court of North Carolina "has previously stated that 'two elements, at least, are necessary to constitute contributory negligence[.]' [W. Constr. Co. v. Atl. Coast Line R.R. Co.], 184 N.C. 179, 180, 113 S.E. 672, 673 (1922). The defendant must demonstrate: (1) a want of due care on the part of the plaintiff; and (2) a proximate connection between the plaintiff's negligence and the injury. Id." Whisnant v. Herrera, 166 N.C. App. 719, 722, 603 S.E.2d 847, 850 (2004) (first alteration in original). This court has

found that Mr. Silverman was traveling sixty-five (65) miles per hour as he exited US-220 South onto I-85 South. His speed was thus in excess of both the posted speed limit of fifty-five (55) miles per hour and the advisory speed of thirty-five (35) miles per hour. Speeding in excess of the posted speed limit is a violation of North Carolina traffic law and is negligence per se under North Carolina law. <u>Harris v. Bridges</u>, 59 N.C. App. 195, 198, 296 S.E.2d 299, 301 (1982). Further, even if Mr. Silverman's speed did not constitute negligence per se, this court would conclude that, under the circumstances, traveling ten (10) miles per hour faster than the posted speed limit and thirty (30) miles per hour faster than the advisory speed for the exit ramp[8] constitutes a breach of Mr. Silverman's duty to exercise due care. As this court has already concluded that Mr. Silverman's excessive speed was the proximate cause of the rollover, this court concludes further that Defendant has demonstrated that Mr. Silverman was contributorily negligent. Mr. Silverman's negligence claim against USPS is therefore barred under North Carolina law.

In sum, Mr. Silverman has failed to prove that any negligence on the part of USPS was a proximate cause of the

---

[8] This court recognizes that Mr. Silverman's failure to obey the advisory speed sign was not a per se violation of North Carolina traffic law. <u>Jones v. Rochelle</u>, 125 N.C. App. 82, 86, 479 S.E.2d 231, 234 (1997).

accident. In the alternative, Mr. Silverman's negligence claim is barred due to contributory negligence.

### Res ipsa loquitur

Although this court has concluded that Mr. Silverman's claims sounding in negligence are barred by his own contributory negligence, this court will briefly address the merits of Plaintiffs' second claim for relief, which invokes the doctrine of res ipsa loquitur. That doctrine "is applicable when no proof of the cause of an injury is available, the instrument involved in the injury is in the exclusive control of defendant, and the injury is of a type that would not normally occur in the absence of negligence." Bowlin v. Duke Univ., 108 N.C. App. 145, 149, 423 S.E.2d 320, 322 (1992) (citing Grigg v. Lester, 102 N.C. App. 332, 401 S.E.2d 657 (1991)).

This court concludes that Plaintiffs' theory of res ipsa loquitur is misplaced. Plaintiffs have shown that USPS maintained exclusive control of the loading of Mr. Silverman's trailer by excluding him from the loading process and sealing the trailer without affording Mr. Silverman any opportunity to inspect the load. However, Plaintiffs have not demonstrated that Defendant had exclusive control of the trailer itself at all times relevant to Plaintiffs' claim. To the contrary, the evidence is clear that Mr. Silverman, not Defendant, had control

of the trailer from the time he hitched it to his tractor until the accident occurred.

> "The rule of <u>res ipsa loquitur</u> never applies when the facts of the occurrence, although indicating negligence on the part of some person, do not point to the defendant as the <u>only</u> probable tortfeasor. In such a case, unless <u>additional evidence</u>, which eliminates negligence on the part of all others who have had control of the instrument causing the plaintiff's injury is introduced, the court must nonsuit the case."

<u>Williams v. 100 Block Assocs., Ltd. P'ship</u>, 132 N.C. App. 655, 664, 513 S.E.2d 582, 587 (1999) (quoting <u>Bryan v. Otis Elevator Co.</u>, 2 N.C. App. 593, 596, 163 S.E.2d 534, 536 (1968)). The facts of Mr. Silverman's accident do not point to USPS as the only probable tortfeasor, and Plaintiffs have not presented additional evidence that is sufficient to eliminate Mr. Silverman's own negligence as the cause of the accident. Indeed, this court has already concluded that Mr. Silverman's negligent operation of the tractor-trailer, and not USPS's negligent loading of the trailer, caused the rollover accident. In failing to demonstrate that USPS maintained exclusive control of the instrumentality that caused Mr. Silverman's injuries, Plaintiffs have failed to satisfy an essential element of a res ipsa loquitur claim. This court will therefore dismiss Plaintiffs' second claim for relief.

### Loss of Consortium

The third claim for relief in this case is Mrs. Silverman's claim of loss of consortium arising out of the injuries that Mr.

22

Silverman suffered when his tractor-trailer rolled over.  Under

North Carolina law, a claim for loss of consortium "embraces

service, society, companionship, sexual gratification and

affection." <u>Nicholson v. Hugh Chatham Mem. Hosp., Inc.</u>, 300 N.C.

295, 302, 266 S.E.2d 818, 822 (1980).  Mrs. Silverman asserts

that USPS negligently loaded the trailer that her husband was

towing and that USPS's negligence caused a loss and disruption of

marital services, society, affection, companionship, and sexual

relations.  Just as Plaintiffs have failed to demonstrate that

Defendant's negligent loading of the trailer was a proximate

cause of the wreck and of Mr. Silverman's injuries, Mrs.

Silverman has likewise failed to show that Defendant's negligence

caused the injuries of which she complains.  Thus, Mrs. Silverman

has not proven that Defendant is liable for her injuries, and her

claim for loss of consortium fails.  <u>See</u> <u>id.</u> at 299-304, 266

S.E.2d at 821-23 (recognizing proximate causation as an element

of loss of consortium and holding that "a spouse may maintain a

cause of action for loss of consortium <u>due to the negligent</u>

<u>actions of third parties</u>" (emphasis added)).

Alternatively, even if Plaintiffs had shown that Defendant's

negligence proximately caused the motor vehicle accident and Mr.

Silverman's resulting injuries, Mrs. Silverman's claim for loss

of consortium would still be foreclosed by her husband's

contributory negligence.  "[A] spouse may maintain a cause of

action for loss of consortium due to the negligent actions of third parties so long as that action for loss of consortium is joined with any suit the other spouse may have instituted to recover for his or her personal injuries." Id. at 304, 266 S.E.2d at 823. Thus, Mrs. Silverman's loss of consortium claim is necessarily derivative of her husband's negligence action against Defendant. Emmons v. Rose's Stores, Inc., 5 F. Supp. 2d 358, 366 (E.D.N.C. 1997) (citations omitted), aff'd per curiam, 141 F.3d 1158 (4th Cir. 1998); Stokes v. Se. Hotel Props., Ltd., 877 F. Supp. 986, 1000 (W.D.N.C. 1994). Because Mr. Silverman's own contributory negligence bars his claim of negligence against Defendant, Mrs. Silverman's derivative loss of consortium claim is also barred. See Emmons, 5 F. Supp. 2d at 366 (citations omitted); Stokes, 877 F. Supp. at 1001 (citation omitted); King v. Cape Fear Mem. Hosp., Inc., 96 N.C. App. 338, 342, 385 S.E.2d 812, 814 (1989).

## CONCLUSION

Plaintiffs have failed to meet their burden of proving that Defendant's negligence caused their injuries. In the alternative, this court concludes that Plaintiff Gregory Silverman was contributorily negligent so as to bar any recovery on the part of Plaintiffs.

**IT IS THEREFORE ORDERED** that judgment be entered in favor of Defendant, United States of America, and that Plaintiffs' claims

be **DISMISSED WITH PREJUDICE**. A Judgment dismissing this action will be entered contemporaneously with this Order.

This the _7th_ day of January, 2011.

_William L. Osteen Jr._
United States District Judge